Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Melinda Cantrall, State Bar No. 198717
E-Mail: mcantrall@hurrellcantrall.com
HURRELL CANTRALL LLP
700 South Flower Street, Suite 900
Los Angeles, California 90017-4121
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendants COUNTY OF LOS ANGELES, DEPUTY
JENNIFER PEDERSEN, and DEPUTY CHRISTOPHER CONLEY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANGEL MENDEZ and JENNIFER LYNN GARCIA,<br><br>Plaintiffs,<br><br>v.<br><br>LEROY D. BACA, Sheriff of Los Angeles County Sheriff's Department, in his official and individual capacities; COUNTY OF LOS ANGELES, A Public Entity, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, a government entity operated by the County of Los Angeles, and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. CV11-04771, MWF (PJWx)<br><br>**NOTICE OF MOTION AND MOTION TO AMEND THE JUDGMENT OR MAKE ADDITIONAL FINDINGS ON BEHALF OF DEFENDANTS COUNTY OF LOS ANGELES, CHRISTOPHER CONLEY AND JENNIFER PEDERSON**<br><br>**[FRCP 52(b), 59(e)]**<br><br>Date:   October 28, 2013<br>Time:   10:00 a.m.<br>Crtrm.: 1600<br><br>[Assigned to Judge Michael W. Fitzgerald, Courtroom "1600"] |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October, 28 at 10:00 a.m., or as soon thereafter as the matter may be heard, the Motion to Amend the Judgment Or Make Additional Findings on behalf of CHRISTOPHER CONLEY and JENNIFER PEDERSON is to come on for hearing in Courtroom "1600" of the above-entitled Court.

1   Defendants bring this motion under *Federal Rules of Civil Procedure*, Rule

2   52(b) and Rule 59(e).  Defendants bring this motion as they respectfully submit this

3   court committed manifest legal error in denying qualified immunity to DEPUTY

4   CONLEY and DEPUTY PEDERSON, and defendants further request additional and

5   different factual findings.  Judgment was entered on August 27, 2013, and

6   defendants request that judgment be entered in their favor instead.  Alternatively,

7   defendants request additional and different findings of fact.

8   This motion is made following the conference of counsel pursuant to *Local*

9   *Rule* 7-3 which took place on September 17, 2013.

10   This motion is based upon this notice and the attached Memorandum of

11   Points and Authorities, all exhibits, papers, pleadings, transcripts, and documents

12   contained on file, and upon all further oral and documentary evidence as may be

13   presented at the time of the hearing on this Motion.

14

15   DATED: September *23*, 2013      HURRELL CANTRALL LLP

16

17

18   By: _____

19   THOMAS C. HURRELL
     MELINDA CANTRALL

20   Attorneys for Defendants COUNTY OF
     LOS ANGELES, DEPUTY JENNIFER

21   PEDERSEN, and DEPUTY

22   CHRISTOPHER CONLEY

23

24

25

26

27

28

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION. ..........................................................................1

II. A PARTY MAY MAKE A MOTION TO AMEND THE JUDGMENT
    UNDER FEDERAL RULES OF CIVIL PROCEDURE, RULE 52(B). ..........4

III. THE DEFENDANTS SHOULD BE ENTITLED TO QUALIFIED
     IMMUNITY AS A REASONABLE OFFICER *COULD* BELIEVE
     THAT EXIGENT CIRCUMSTANCES JUSTIFIED A SEARCH OF
     THE SHED WITHOUT A WARRANT AND EXIGENT
     CIRCUMSTANCES EXCUSED ANY "KNOCK AND ANNOUNCE"
     REQUIREMENT............................................................................5

     A.  QUALIFIED IMMUNITY IS BASED UPON *OBJECTIVE*
         REASONABLENESS, NOT THE *SUBJECTIVE* MINDSET OF
         THE OFFICER. .....................................................................5

     B.  EXIGENT CIRCUMSTANCES DO NOT "DISAPPEAR" IF A
         SUSPECT BECOMES TRAPPED. .............................................7

     C.  EXIGENT CIRCUMSTANCES EXCUSED THE "KNOCK
         AND ANNOUNCE" REQUIREMENT IN THIS CASE. ............ 11

IV. AS A SEARCH OF THE MAIN RESIDENCE WAS LAWFUL, A
    SEARCH OF THE PLAINTIFFS' SHACK WAS AUTHORIZED AS
    A "PROTECTIVE SWEEP" AND DEFENDANTS ARE ENTITLED
    TO QUALIFIED IMMUNITY UNDER THE STATE OF THE LAW. ....... 12

     A.  EXIGENT CIRCUMSTANCES OR A REASONABLE BELIEF
         THAT EXIGENT CIRCUMSTANCES EXISTED JUSTIFIED
         A SEARCH OF THE MAIN RESIDENCE.............................. 12

     B.  A SEARCH OF THE MAIN RESIDENCE WAS JUSTIFIED
         DUE TO THE HOMEOWNERS' PROBATION STATUS. ............. 14

     C.  AS THE OFFICERS HAD LAWFUL CAUSE TO SEARCH
         THE MAIN HOME, THEY HAD AUTHORITY TO
         CONDUCT A "PROTECTIVE SWEEP" OF THE PLAINTIFFS'
         SHACK............................................................................ 14

         a.  *The Protective Sweep Doctrine Applies Where Officers
             Are Executing a Search Warrant or Performing a Search
             Based Upon Exigent Circumstances.* ............................. 15

         b.  *A Protective Sweep May Be Performed of Distinct
             Dwellings Located At a Single Address Without A Warrant
             for the Separate Dwelling.* .......................................... 16

         c.  *Due to the Risk of Being Ambushed During Retreat, An
             Officer May Perform a Protective Sweep Of An Area.* ............. 17

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

d.   *A Protective Sweep May Be Conducted of the Backyard of a Home If the Officers Believe the Yard May Harbor an Individual Posing a Danger to Those On the Scene, Including Structures or Sheds Within the Yard.* ....................... 18

e.   *The Search of the Shack Was Clearly Justified as a Protective Sweep For a Dangerous Individual Or Defendants Must Be Granted Qualified Immunity.* .................. 19

D.   AN OFFICER WITH AUTHORITY TO PERFORM A "PROTECTIVE SWEEP" DOES NOT NEED TO COMPLY WITH THE "KNOCK AND ANNOUNCE" REQUIREMENT. ........ 21

V.   AS THERE WAS NO INDEPENDENT FOURTH AMENDMENT VIOLATION OR QUALIFIED IMMUNITY APPLIES, THERE CAN BE NO DAMAGES BASED UPON FORCE BY PROVOCATION. .......... 22

VI.   DEFENDANTS RESPECTFULLY REQUEST DIFFERENT AND/OR ADDITIONAL FACTUAL FINDINGS. ....................................... 23

VII.   AN AWARD OF FUTURE MEDICAL EXPENSES MUST BE REDUCED TO PRESENT VALUE. ....................................... 25

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Act Up!/Portland v. Bagley*, 988 F.2d 868 (9th Cir. 1993)..........................................5

*Alexander v. City and County of San Francisco*, 29 F.3d 1355 (9th Cir. 1994) ...... 22

*Alford v. Cumberland County*, 2007 U.S. App. LEXIS 24138 (4th Cir. 2007) ......... 6

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...........................................................6

*Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002)...............................................23

*County of L.A. v. Superior Court*, 21 Cal.4th 292 (1999)......................................25

*Espinosa v. City & County of San Francisco*, 598 F.3d 528 (9th Cir. 2010) ........... 23

*Fishbein v. City of Glenwood Springs*, 469 F.3d 957 (10th Cir. 2006) .................. 15

*Fisher v. City of San Jose*, 558 F.3d 1069 (9th Cir. 2009) ..................................... 7

*Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207 (5th Cir. 1986) ........................... 5

*Fox v. Pacific Southwest Airlines*, 133 Cal.App.3d 565 (1982) ............................. 25

*Gutierrez v. County of L.A.*, 2013 U.S. Dist. LEXIS 103829 (C.D. Cal. 2013)14,16,21

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................ 5

*Maceachern v. City of Manhattan Beach*, 623 F.Supp.2d 1092 (C.D. Cal. 2009)................................................................................................................... 23

*Maryland v. Buie*, 494 U.S. 325 (1990)................................................................ 14

*Niles v. City of San Rafael*, 42 Cal.App.3d 230 (1974) ........................................ 25

*Reichle v. Howards*, 132 S.Ct. 2088 (2012) ......................................................... 5

*Steagald v. United States*, 451 U.S. 204 (1981).................................................... 13

*Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969) .................................. 25

*U-Haul Int'l v. Lumbermens Mut. Cas. Co.*, 2007 U.S. Dist. LEXIS 39843 (D. Az. 2007)........................................................................................................... 5

*United States v. Arellano-Ochoa*, 461 F.3d 1142 (9th Cir. 2006) .......................... 8

*United States v. Bynum*, 362 F.3d 574 (9th Cir. 2004) ........................................ 12

*United States v. Carpenter*, 2011 U.S. Dist. LEXIS 16862 (ED. Tenn. 2011) ........ 19

*United States v. Flippin*, 924 F.2d 163 (9th Cir. 1991) .......................................... 8

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1   *United States v. Garcia*, 997 F.2d 1273 (9th Cir. 1993)............................................ 16

2   *United States v. Haqq*, 278 F.3d 44 (2nd Cir. 2002) ......................................... 16

3   *United States v. Lemus*, 582 F.3d 958 (9th Cir. 2009).......................................... 9

4   *United States v. Maldonado*, 472 F.3d 388 (5th Cir. 2006)................................... 18

5   *United States v. Martins*, 413 F.3d 139 (1st Cir. 2005)........................................ 15

6   *United States v. Minor*, 2007 U.S. App. LEXIS 13068 (11th Cir. 2007)................. 18

7   *United States v. Paopao*, 469 F.3d 760 (9th Cir. 2006)...................................... 18

8   *United States v. Pericles*, 2009 U.S. Dist. LEXIS 45044 (S.D. Fla. 2009) .............. 19

9   *United States v. Ramirez*, 770 F.2d 1458 (9th Cir. 1985)................................... 11

10   *United States v. Taylor*, 248 F.3d 506 (6th Cir. 2001) .......................................... 9, 21

11   *United States v. Weems*, 322 F.3d 18, 23 (1st Cir. 2003) .................................... 7, 13

12

## OTHER AUTHORITIES

14   42 U.S.C. § 1983 ................................................................................. passim

15   CACI 3904A ................................................................................. 25

16   *Federal Rules of Procedure*, Rule 52(b) ................................................ 4

17   *Federal Rules of Procedure*, Rule 59(e) ................................................ 4

18

19

20

21

22

23

24

25

26

27

28

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION.**

Defendants respectfully submit the unique circumstances of this case mandate a defense judgment on the federal claims based upon qualified immunity. Defendants maintain they did not violate plaintiffs' Fourth Amendment rights based upon a warrantless search or a failure to comply with the knock and announce requirement. Moreover, even if such a violation was found, defendants respectfully maintain they are entitled to qualified immunity as a matter of law.

First, exigent circumstances justified a search of the plaintiffs' shack for the parolee-at-large and excused any warrant requirement and excused compliance with the "knock and announce" requirement. The court found there was probable cause to believe the suspect was inside the plaintiffs' shed. However, defendants respectfully submit the court erred in finding that an armed and dangerous parolee-at-large who had evaded past escape and who was possibly in the shed, was not an officer safety risk. As Deputy Conley testified he did not feel specifically threatened immediately prior to opening the shed door, this court found there was no exigency based upon officer safety. *However, defendants respectfully submit the denial of qualified immunity based upon exigency and officer safety was legal error under United States Supreme Court precedent.* While the qualified immunity inquiry is based upon the factual circumstances known to the officer, whether the officer subjectively feared for his safety is irrelevant. Here, a reasonable officer in the position of defendants *could* have believed exigent circumstances existed to search the shack without a warrant and to refrain from knocking and announcing the officers' presence to those who may have been in the shack, including the armed and dangerous parolee-at-large, based upon officer safety concerns. As safety concerns were *objectively reasonable* based upon the factual findings made by this court, qualified immunity should have been granted in favor of defendants.

Furthermore, under similar Ninth Circuit case law, defendants respectfully

-1-

1   submit the exigency present where officers are attempting to arrest a potentially
2   armed and dangerous suspect does not dissipate simply because the suspect becomes
3   "trapped."  The officers are not required to stop and obtain a search warrant when an
4   armed and dangerous individual may have become trapped in a structure and, in
5   fact, could have been seriously harmed if they attempted to simply retreat from the
6   shed to secure a warrant.  Unlike a typical dwelling, the armed and dangerous
7   parolee-at-large was potentially trapped in a 7 t x 7 ft wood shed which the officers
8   came upon during the course of clearing the yard.  Along these lines, the suspect
9   could have shot through the walls or burst through the door and ambushed the
10  officers at any moment, before the officers could have had the chance to retreat from
11  the shed and surround the dwelling and obtain a warrant.  In addition, the officers
12  were not certain where the parolee-at-large was hiding as they were tasked to clear
13  the yard, upon which the plaintiffs' shack was situated, and they could have been
14  attacked at any moment, based upon the facts known to them at the time of the
15  incident.  Defendants respectfully submit that in such a highly dangerous situation, it
16  was not unlawful for Deputy Conley to open the door to the shed without a search
17  warrant and without announcing the presence of the officers.  At the very least,
18  certainly, a reasonable officer in the position of the defendants *could* have believed
19  exigent circumstances excused compliance with the warrant and knock and
20  announce requirements in relation to the shed.  Officer safety is of the utmost
21  importance and cannot be compromised by hindsight second-guessing of alternative
22  actions that could have been taken.
23        Second, defendants submit the officers had lawful authority to search the
24  *main house* based upon exigent circumstances.  This court expressly refrained from
25  ruling on whether there were exigent circumstances to search the main house
26  without a warrant, and defendants respectfully respect a ruling in that regard and
27  submit that exigent circumstances existed under the state of the case law.  Moreover,
28  Paula Hughes was on probation and was required to submit to a search of the main

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1   house.  *Defendants respectfully submit that because they were authorized to search*
2   *the main residence, as a matter of law, the officers had authority to clear or perform*
3   *a "protective sweep" of the plaintiffs' shack, which was located in the backyard of*
4   *the main residence.*  A "protective sweep" is a quick and limited search of premises
5   conducted for the safety of the officers.  Unlike a full blown search of property, a
6   protective sweep is a cursory visual inspection of those places in which a person
7   might be hiding.  A "protective sweep" is an exception to the warrant requirement
8   under the Fourth Amendment, and is authorized based only upon a reasonable
9   suspicion, i.e., where there are articulable facts which, taken together with the
10   rational inferences from those facts, would warrant a reasonably prudent officer in
11   believing that the area to be swept harbors an individual posing a danger to the
12   officers on the scene, the area may be searched.  In this case, the court found the
13   officers actually had probable cause, which is even higher than the required
14   reasonable suspicion, to believe the suspect was in the shack.

15   *Under the case law cited below, where officers arrive at a single residence*
16   *with two separate dwellings with authority to search one of the dwellings, they may*
17   *lawfully search the separate dwelling as a "protective sweep" without a warrant.*
18   The cases addressed by the court in its opinion do not involve the authority to
19   conduct a search as a "protective sweep."  In addition, where an officer is lawfully
20   authorized to search a main house, he may perform a protective sweep of other
21   structures in the yard, particularly where attempting to locate an armed and
22   dangerous parolee-at-large.  Again, qualified immunity must apply as the case law is
23   certainly not clearly established that a reasonable officer could not believe that it
24   was lawful to perform a cursory and limited search as a "protective sweep" of the
25   plaintiffs' shack, located on the grounds of which there was probable cause to
26   believe a dangerous felony suspect/parolee-at-large was hiding.

27   Moreover, when performing a "protective sweep," an officer need not comply
28   with any additional "knock and announce" requirements.  The very nature of such a

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1 search for suspects that may be hiding or who present a danger to the officers is

2 evidence that such a "knock and announce" is not required for protective sweeps.

3 Accordingly, the defendants did not violate the plaintiffs' Fourth Amendment rights.

4 Alternatively, at a minimum, even if a Fourth Amendment violation could be found,

5 the law was unequivocally not *clearly established* such that *every reasonable officer*

6 would know that the officers acted unlawfully — defendants are of aware of no case

7 which indicates officers must knock and announce their presence while performing

8 a protective sweep of an area.  Thus, qualified immunity should have been granted

9 to defendants under the specific circumstances of this case.

10 As the officers either did not violate the Fourth Amendment in relation to the

11 warrantless search of the shack or the failure to comply with the "knock and

12 announce" requirement, or the officers are entitled to qualified immunity from such

13 claims as a matter of law, there is no independent constitutional violation upon

14 which to support a force by provocation claim.  Hence, the judgment in favor of the

15 plaintiffs on the 42 U.S.C. § 1983 claims must be reversed, and judgment must be

16 entered in favor of the defendant officers.

17 Furthermore, the award of future medical expenses must be reduced to

18 present value.

19 **II.   A PARTY MAY MAKE A MOTION TO AMEND THE JUDGMENT UNDER FEDERAL RULES OF CIVIL PROCEDURE, RULE 52(B).**

20 After a court issues Findings of Fact and Conclusions of Law, *Federal Rules*

21 *of Procedure,* Rule 52(b) provides as follows:

22
23 On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings--or make additional findings--and may amend the judgment
24 accordingly. The motion may accompany a motion for a new trial under Rule 59.

25 Also, Rule 59(e) provides that a motion to alter or amend a judgment must be filed

26 no later than 28 days after the entry of the judgment.  A motion to amend is proper

27 to correct a manifest error in law, or to request additional or different findings or to

28

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1  take other action in the interests of justice, and defendants file the instant motion on

2  such grounds.  *U-Haul Int'l v. Lumbermens Mut. Cas. Co.,* 2007 U.S. Dist. LEXIS

3  39843, *3 (D. Az. 2007) ("The purpose of post-judgment motions under Rules 52(b)

4  and 59 is to give the Court an opportunity to correct manifest errors of law or fact,

5  allow the parties to present newly discovered evidence, take additional testimony,

6  make additional findings, or take other action in the interests of justice."); *Fontenot*

7  *v. Mesa Petroleum Co.,* 791 F.2d 1207, 1219 (5th Cir. 1986).

8  **III.   THE DEFENDANTS SHOULD BE ENTITLED TO QUALIFIED**
   **IMMUNITY AS A REASONABLE OFFICER *COULD* BELIEVE THAT**
9  **EXIGENT CIRCUMSTANCES JUSTIFIED A SEARCH OF THE**
   **SHED WITHOUT A WARRANT AND EXIGENT CIRCUMSTANCES**
10  **EXCUSED ANY "KNOCK AND ANNOUNCE" REQUIREMENT.**

11        As this court is aware, a law enforcement officer is entitled to qualified

12  immunity if a reasonable officer in his position *could* have believed that his conduct

13  was lawful, and the defense may only be denied where *every* reasonable officer

14  would have acted differently.  *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th

15  Cir. 1993); *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012).  Existing precedent

16  must have placed the statutory or constitutional question beyond debate.  *Id.*

17        **A.   QUALIFIED IMMUNITY IS BASED UPON *OBJECTIVE***
           **REASONABLENESS, NOT THE *SUBJECTIVE* MINDSET OF**
18        **THE OFFICER.**

19        In denying qualified immunity in this case, this court focused on its finding

20  that Deputy Conley did not feel threatened prior to opening the door to plaintiffs'

21  shed, and thus found exigent circumstances based upon officer safety did not justify

22  a warrantless search of the shed or excuse compliance with the knock and announce

23  requirement.  However, defendants respectfully submit that the court's analysis was

24  legally erroneous under United States Supreme Court precedent.

25        The Supreme Court long did away with a subjective component for qualified

26  immunity, measuring the defense by only an objective viewpoint based upon the

27  circumstances of the case.  *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).

28  Defendants respectfully submit that a reasonable officer in the position of the

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1   defendants and knowing the facts known to the defendants at the time of the incident

2   could have reasonably believed exigent circumstances based upon officer safety

3   reasons justified a warrantless search of the shack and further justified a lack of

4   compliance with the knock and announce statute.

5       In *Anderson v. Creighton*, 483 U.S. 635 (1987), the plaintiffs alleged their

6   Fourth Amendment rights were violated when officers conducted a warrantless

7   search of their home based upon exigent circumstances as the officers believed a

8   bank robber may have been in the plaintiffs' house. *Id.* at 637. The United States

9   Supreme Court recognized that whether a search is supported by exigent

10  circumstances will often require examination of the information possessed by the

11  searching officials. *Id.* at 641. However, the relevant inquiry is the objective (albeit

12  fact-specific) question of whether a reasonable officer could have believed the

13  officer's warrantless search to be lawful, in light of clearly established law and the

14  information the searching officers possessed. *Id. Importantly, the officer's*

15  *subjective beliefs about the search are irrelevant. Id.* The Supreme Court also

16  reinforced that immunity may be provided to police officers who conduct unlawful

17  warrantless searches of innocent third parties' homes in search of fugitives, if the

18  officers acted reasonably from an objective standpoint. *Id.* at 645-46.

19      In *Alford v. Cumberland County*, 2007 U.S. App. LEXIS 24138 (4th Cir.

20  2007), the plaintiff filed suit under 42 U.S.C. § 1983 alleging excessive force

21  against an officer who shot him during a drug raid. *Id.* at 1. The defense argued the

22  shooting was justified as the officer *feared* the plaintiff was attempting to take his

23  gun. *Id.* at 13. The court noted the immunity inquiry is objective, and the proper

24  inquiry was whether a reasonable officer in the defendant's position could have

25  believed that his gun was threatened, based upon the information known to the

26  officer. *Id.* at 14. However, "[t]he Court does not inquire whether [the defendant]

27  himself believed that his gun was threatened. Instead, the focus is on *a hypothetical*

28  *reasonable officer facing the situation* (reconstructed in plaintiff's favor) that [the

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1  defendant] faced." *Id.*

2  Defendants respectfully submit a hypothetical officer in the position of

3  DEPUTY CONLEY with the facts known to him could have reasonably feared for

4  his safety and for his fellow officers' safety while searching the backyard and

5  coming upon the plaintiffs' shack, with the knowledge that there was probable

6  cause[1] to believe an armed and dangerous felony suspect/parolee-at-large was hiding

7  in the shack.  An officer in position of the defendants faced with the facts and

8  circumstances surrounding this unique case *could* reasonably believe the safety of

9  the officers constituted an exigency which justified opening the door to the shed to

10  attempt to find the suspect without a warrant and in refraining from knocking and

11  announcing so as to not tip off their presence.

12  If the defendants should have known plaintiffs' shack was an inhabited

13  dwelling as found by this court, the cases have found exigency justifies a search a

14  dwelling where there is probable cause to believe a dangerous suspect will be

15  located therein.  *United States v. Weems*, 322 F.3d 18, 23 (1st Cir. 2003).  As the

16  court found the defendants had probable cause to believe the suspect was in the

17  shack, exigent circumstances justified a search of the residence for the dangerous

18  suspect.  Defendants are not aware of any cases holding that if a dangerous suspect

19  traps himself within a house, the officers must obtain a search warrant and exigent

20  circumstances do not justify a search of the dwelling for the suspect.  Thus,

21  defendants respectfully they must be afforded qualified immunity.

22  **B.    EXIGENT CIRCUMSTANCES DO NOT "DISAPPEAR" IF A
        SUSPECT BECOMES TRAPPED.**

23  In *Fisher v. City of San Jose*, 558 F.3d 1069, 1075 (9th Cir. 2009), the Ninth

24  Circuit reiterated that exigent circumstances that justify a warrantless entry include a

25

26  ───────────────

27  [1] This court found there was probable cause to search for the suspect inside the
    plaintiffs' shack.  (Ex. A, p. 29.)

28

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1  reasonable belief that entry was necessary to prevent physical harm to the officers or

2  other persons, the escape of a suspect, or some other consequence improperly

3  frustrating legitimate law enforcement efforts.  *See also United States v. Arellano-*

4  *Ochoa*, 461 F.3d 1142, 1145 (9th Cir. 2006).  In this case, defendants respectfully

5  maintain exigent circumstances clearly existed to search the property where the

6  plaintiffs' resided.  In fact, plaintiffs' expert, Roger Clark, testified there were

7  exigent circumstances for defendants to enter the property.  (Ex. C, p. 14:20-15:25.)

8  Defendants respectfully submit the exigent circumstances do not disappear if a

9  suspect becomes trapped.

10      In *United States v. Flippin*, 924 F.2d 163 (9th Cir. 1991), the Ninth Circuit

11  emphasized that "[t]he Fourth Amendment does not require police officers to delay

12  in the course of an investigation if to do so would gravely endanger their lives or

13  lives of others." *Id.* at 166.  "Police must be allowed to protect themselves before a

14  *potential* threat of danger develops into a tragedy." *Id.* (emphasis added).  In that

15  case, the parties disputed whether the suspect's makeup bag was properly searched.

16  *Id.* at 166-67.  The Court explained that if exigency circumstances exist due to

17  danger, they do not dissipate simply because the item at issue has been seized, and

18  the officer may perform a search in order to reasonably protect himself from danger.

19  *Id.*

20      Indeed, where the danger facing the officers is a possibly armed suspect, the

21  danger to the officers is substantial and does not dissipate simply because the

22  suspect becomes trapped.  In *Fisher, supra,* 558 F.3d at 1073, the Ninth Circuit

23  considered whether exigent circumstances to arrest an armed and surrounded

24  suspect dissipated over time.  The plaintiff argued that once a suspect is seized by

25  virtue of being surrounded and ordered to surrender (i.e., "trapped"), the passage of

26  time may operate to require the officers to obtain a warrant.  *Id.*  The Court indicated

27  that restricting an officer's ability to quickly and effectively adjust tactics based on

28  the evolving events on the scene, would place lives in danger and officers would

1  second-guess themselves. *Id.* at 1079. The Ninth Circuit rejected the creation of a

2  mid-standoff warrant requirement. *Id.* at 1080. In addition, importantly, in *United*

3  *States v. Lemus*, 582 F.3d 958 (9th Cir. 2009), the Ninth Circuit held that when

4  officers come upon an area where a dangerous individual may be hiding, they

5  cannot simply leave the area as they risk being ambushed from behind, and a search

6  of the area is justified for their safety. *Id.*

7      Notably, even if the officers had decided to secure a warrant to fully search

8  the plaintiffs' shed, they would still be justified in performing a limited search to

9  clear the area of potentially dangerous individuals, such as the parolee-at-large who

10  was considered armed and dangerous.[2] In *United States v. Taylor*, 248 F.3d 506

11  (6th Cir. 2001) officers who did not have probable cause for a search warrant

12  decided to question a criminal suspect. *Id.* at 510. A resident gave the officers

13  permission to enter the home, at which time they saw drugs and decided to secure

14  the premises in order to obtain a search warrant. *Id.* A "protective sweep" was

15  performed in order to secure the premises, during which time contraband was

16  recovered. *Id.* at 510-511. With regard to a challenge by the suspect that the

17  officers violated his Fourth Amendment rights, the officers argued they were

18  justified in first performing a protective sweep while waiting to obtain the warrant.

19  *Id.* at 512. The Court held the officers may conduct a "protective sweep" of the area

20  to ensure the safety of those officers left behind to secure the premises while a

21  warrant to search the premises was obtained, in order to protect the safety of the

22  officer who remains at the scene; the sweep must be limited to a cursory search of

23  the premises for the purpose of finding persons hidden there who would threaten the

24  officer's safety. *Id.*

25

26  _____

27  [2] An officer's ability to conduct a limited search or a "protective sweep" of an area is discussed in detail below.

28

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1   Similarly, defendants respectfully submit the court erred in finding that if the

2   suspect was in the shed, he was trapped and a warrant could have been obtained, or

3   that if he was not trapped the officers were not in danger.[3]  As indicated above,

4   exigent circumstances may be found where the officers are trying to prevent the

5   escape of a suspect, or for officer safety reasons.  *In this case, even if the court finds*

6   *the suspect was trapped and therefore could no longer flee and exigent*

7   *circumstances were no longer present to prevent his escape, exigent circumstances*

8   *were still present based upon the danger to the officers' safety.*  Defendants maintain

9   that under *Fisher* and *Lemus,* the exigent circumstances based upon danger to the

10  officers while they attempted to apprehend a dangerous parolee-at-large did not

11  dissipate simply because the suspect may have become "trapped."  Rather, the

12  potential danger to the officers was extremely high.  The officers came upon the

13  shed during the course of clearing the backyard and could have been immediately

14  fired upon by the suspect.  The officers had probable cause to believe the suspect

15  was hiding in the shed.  (*Supra.*)  The small shed was made of plywood, which a

16  suspect could have easily blasted through if he became trapped therein, posing a

17  grave danger to the officers, particularly if he heard the officers outside of the shed.

18  As the court noted, the shed had no window, and the officers could not see what was

19  going on inside the shed without looking through the doorway.  Defendants

20  _____

21  [3] Defendants respectfully submit it was erroneous for this court to indicate that if the
22  suspect was not in the shack there was no exigent circumstances to search the shack.
    (Ex. A, p. 31.)  Defendants respectfully submit that such circular reasoning
23  contravenes the requirement that the reasonableness of the defendants' actions must
    be judged by the circumstances facing them at the time of the incident.  The officers
24  did not know the suspect was not in the shack before clearing the shack.  Exigent
25  circumstances exist to protect the safety of the officers and to prevent escape of a
    suspect. *Supra.* The officers were in a highly volatile situation in looking for a
26  dangerous parolee-at-large in a yard full of debris and structures were the suspect
27  could have hidden and taken aim or ambushed the officers at any moment.

28

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1 respectfully submit exigent circumstances and the grave dangers facing the officers,

2 justified a search of the shed.  As the court found in *Lemus,* the suspect could have

3 ambushed the officers the moment they tried to retreat from the shack.  Moreover,

4 Deputy Conley explained at trial that he could not take position behind the

5 automobiles or anywhere else in the yard to surround any potential threat, as none of

6 the area had yet been cleared and it was unknown where the suspect in fact was

7 located.  (Ex. B, p. 86:13-22.)  Thus, defendants submit it was error for this court to

8 find the officers could have safely retreated from the shed and surrounded the shed

9 and obtained a search warrant.

10      At the very least, the law was plainly not clearly established such that *every*

11 reasonable officer would have believed their safety was not in jeopardy and that

12 exigent circumstances did not justify a warrantless search of the shack, even if it

13 was believed to be an inhabited dwelling, and qualified immunity must be afforded

14 to the officers.  Defendants are not aware of any case holding that where there are

15 exigent circumstances for a warrantless entry based on the need to prevent the

16 escape of a dangerous suspect and because of officer safety, they disappear if the

17 suspect, *who was to be considered armed and dangerous,* becomes trapped.

18   **C.   EXIGENT CIRCUMSTANCES EXCUSED THE "KNOCK AND ANNOUNCE" REQUIREMENT IN THIS CASE.**

19

20      In its order, this court noted that the knock and announce requirement does

21 not apply when there officers have a reasonable suspicion that the circumstances

22 present a threat of violence, and "the showing is not high."  (Ex. A, p. 37.)  A police

23 officer's reasonable belief that an announcement might place him or his associates in

24 physical peril constitutes exigent circumstances that justify noncompliance with the

25 "knock and announce" requirement.  *United States v. Ramirez*, 770 F.2d 1458, 1460

26 (9th Cir. 1985).  In *Ramirez*, the Court found exigent circumstances excused the

27 knock and announce requirement, including the fact that the suspect was considered

28 armed and dangerous.  *Id.* at 1460.  Similarly, in *United States v. Bynum*, 362 F.3d

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

574 (9th Cir. 2004), the Court stressed that exigent circumstances justify non-compliance with the "knock and announce" statute where the suspect has a gun, versus scenarios where it is merely known that the residence may contain a gun within the home. *Id.* at 582.

Defendants respectfully submit that exigent circumstances clearly excused the "knock and announce" requirement, and the officers had reason to believe the *armed and dangerous* parolee-at-large who had previously evaded capture was in the shed. Clearly, announcing the presence of the officers to an armed and dangerous parolee-at-large who may have been hiding in a 7 x7 foot shed with no escape route presented an extremely dangerous and volatile situation for the officers.  Deputy Conley said he did not "knock and announce" upon reaching the shed, *as this would have put the officers at risk.*  (Ex. B, p. 87:25-90:6.)  Under these circumstances, the case law is clear that the officers need not comply with the knock and announce requirement.  Furthermore, the officers would be entitled to qualified immunity from any claim based upon the failure to comply with the knock and announce requirement, given the case law holds that where a suspect is armed, exigent circumstances based upon officer safety excuse compliance with the "knock and announce" statute.  *Supra.*  Defendants respectfully submit that not *every* reasonable officer would have believed their conduct unlawful.

**IV.  AS A SEARCH OF THE MAIN RESIDENCE WAS LAWFUL, A SEARCH OF THE PLAINTIFFS' SHACK WAS AUTHORIZED AS A "PROTECTIVE SWEEP" AND DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY UNDER THE STATE OF THE LAW.**

As exigent circumstances or other lawful means existed to search the Hughes residence, the officers were justified in "clearing" or performing a "protective sweep" of the backyard.  Importantly, the law is not clearly established to the contrary and defendants must be granted qualified immunity as a matter of law.

**A.  EXIGENT CIRCUMSTANCES OR A REASONABLE BELIEF THAT EXIGENT CIRCUMSTANCES EXISTED JUSTIFIED A SEARCH OF THE MAIN RESIDENCE.**

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1    In the Findings of Fact and Conclusions of Law, this Court specifically

2   declined to rule on whether there were exigent circumstances to search the main

3   house.  (Ex. A, p. 31.)  Defendants respectfully request a ruling on this issue, as

4   defendants respectfully submit that if exigent circumstances existed to search the

5   house, the officers were justified in performing a limited search of the shed as a

6   "protective sweep."

7    Where an officer has an arrest warrant and probable cause to believe a suspect

8   is in the home of a third party, officers are excused from obtaining a search warrant

9   for a search of the third party's home where exigent circumstances exist.  *United*

10  *States v. Weems*, *supra,* 322 F.3d at 23 (citing *Steagald v. United States*, 451 U.S.

11  204 (1981)).  Defendants respectfully submit that exigent circumstances existed to

12  search the main home for the parolee-at-large/felony suspect in this case, based

13  upon *Weems*, *supra,* 322 F.3d 18.  In *Weems*, the officers had an arrest warrant for a

14  felony suspect, who was known to be armed and dangerous, and they had reason to

15  believe the suspect was in the home of a third party.  *Id.* at 20-22.  As the

16  homeowner only consented to a search upon threat that the officers would break

17  down her door, the Court found the homeowner did not consent to the search.  *Id.*

18  Regardless, the Court found exigent circumstances justified the entry into the

19  residence to search for the suspect, as there was a need to act quickly to apprehend

20  the dangerous suspect, who may have been trying to escape.  *Id.*

21   Similarly, in this case, factual findings were made that the suspect, a parolee-

22  at-large, was a wanted felony suspect who was categorized as armed and dangerous.

23  (Ex. A, p. 2.)  The suspect had previously evaded prior attempts to apprehend him.

24  (Ex. A, p. 2.)  There was an arrest warrant for the suspect.  (Ex. A, p. 2)  There was

25  probable cause to believe the suspect was at the main residence.  (Ex. A, p. 29.)

26  Upon approaching the front door of the main door, the sergeant heard running

27  within the residence, toward the back of the residence.  (Ex. A, p. 7.)  In addition,

28  the homeowner ceased communicating with the sergeant from within the residence.

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

-13-

(Ex. A, p. 8.)  The defendant officers were assigned to cover the back door of the main property should the suspect attempted to escape from the rear, and to clear the rear of the property should the suspect be hiding somewhere thereabouts.  (Ex. A, pp. 4, 29.)  Thus, defendants respectfully submit exigent circumstances justified a search of the main residence, to attempt to avoid escape of the suspect and for officer safety.  Certainly, as demonstrated in *Weems,* at the very least the officers were entitled to qualified immunity from any argument that they violated the Fourth Amendment in relation to the search of the main residence.

Based upon the foregoing, defendants respectfully submit exigent circumstance clearly justified a search of the main house for the suspect.  Because the officers were justified in entering the main house to search for the suspect based upon exigent circumstances, they were entitled to perform a protective sweep of the plaintiffs' shack, as discussed below.

**B.    A SEARCH OF THE MAIN RESIDENCE WAS JUSTIFIED DUE TO THE HOMEOWNERS' PROBATION STATUS.**

As Paula Hughes was on probation, she was required to submit to a warrantless search of her home.  *Gutierrez v. County of L.A.*, 2013 U.S. Dist. LEXIS 103829, *20-24 (C.D. Cal. 2013)

**C.    AS THE OFFICERS HAD LAWFUL CAUSE TO SEARCH THE MAIN HOME, THEY HAD AUTHORITY TO CONDUCT A "PROTECTIVE SWEEP" OF THE PLAINTIFFS' SHACK.**

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.  It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."  *Maryland v. Buie*, 494 U.S. 325, 327 (1990).  The United States Supreme Court has held the Fourth Amendment permits a protective sweep where the searching officer possesses a reasonable suspicion, a standard less than probable cause, that the area to be swept harbors an individual posing a danger to the officer or others.  *Id.*  There is an immediate interest of the police officers in taking steps to

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1   assure themselves that the house in which a suspect is being, or has just been,

2   arrested is not harboring other persons *who are dangerous and who could*

3   *unexpectedly launch an attack.  Id.* at 333.  The interest of officer safety outweighs

4   the intrusion any such procedures may entail.  *Id.* at 334.  If there are articulable

5   facts which, taken together with the rational inferences from those facts, would

6   warrant a reasonably prudent officer in believing that the area to be swept harbors an

7   individual posing a danger to those on the arrest scene, those areas may be searched

8   without a warrant.  *Id.*  The "protective sweep" doctrine represents an exception to

9   the Fourth Amendment's warrant requirement.  *Fishbein v. City of Glenwood*

10  *Springs*, 469 F.3d 957, 961 (10th Cir. 2006).

        **a.**    ***The Protective Sweep Doctrine Applies Where Officers Are***
11              ***Executing a Search Warrant or Performing a Search Based***
12              ***Upon Exigent Circumstances.***

13          The protective sweep doctrine has been extended to the execution of search

14  warrants as well as arrest warrants, or to a search performed without a warrant based

15  upon exigent circumstances.  *United States v. Martins*, 413 F.3d 139 (1st Cir. 2005).

16  In *Martins,* the court noted as an initial matter that police officers, in conjunction

17  with an arrest on residential premises, may undertake a protective sweep where they

18  have a "reasonable suspicion," from an objective standpoint, that the area to be

19  searched harbors an individual posing a danger."  *Id.* at 149.  The Court indicated

20  that the protective sweep doctrine has been expanded to allow protective sweeps in

21  conjunction with the execution of search warrants.  *Id.* at 149.  Moreover, since

22  police officers may lawfully enter a home either with a warrant or upon probable

23  cause plus exigent circumstances, it would make no sense to hold that the police

24  may conduct a protective sweep when lawfully entering with a warrant but must

25  refrain from doing so when lawfully entering on the basis of exigent circumstances.

26  *Id.* at 149-50.  In either event, the key is the reasonableness of the belief that the

27  officers' safety or the safety of others may be at risk.  *Id.*

28          Similarly, the Ninth Circuit has held that where the entry into a home is

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1  lawful, even without a warrant, an officer may perform a protective sweep. *United*
2  *States v. Garcia*, 997 F.2d 1273, 1282 (9th Cir. 1993) (finding a protective sweep
3  proper where officers gained lawful consent to enter home); *see also United States*
4  *v. Flippin, supra,* 924 F.2d at 165.

5           b.  *A Protective Sweep May Be Performed of Distinct Dwellings*
   *Located At a Single Address Without A Warrant for the*
6                    *Separate Dwelling.*

7         The law allows a protective sweep (limited sweep to look for individuals) of
8  areas that are not included within the areas authorized to be searched pursuant to a
9  warrant, in order to ensure officer safety.  For example, the protective sweep extends
10  to a search of rooms within a house which are not covered by a search warrant of the
11  main house, such as where a renter inhabits a bedroom or section of the home not
12  covered by a search warrant. *See United States v. Haqq*, 278 F.3d 44, 45, 49, fn. 4
13  (2nd Cir. 2002).

14         In *Gutierrez v. County of L.A.,* 2013 U.S. Dist. LEXIS 103829 (C.D. Cal.
15  2013), the court considered whether a search of an apartment detached from the
16  main house, which had a separate, locked entry, was permitted. *Id.* at *31.  The
17  court considered whether the search to the separate apartment was permitted, where
18  the officers had a single address for a search that lead to two, distinct units. *Id.* **The**
19  **court held that regardless of whether the officers had probable cause to search the**
20  **separate unit/detached dwelling, the search of the detached dwelling was justified**
21  **under the protective search doctrine, as the deputies were performing a limited**
22  **search to confirm no one has hiding on the premises.** *Id.*

23         Defendants respectfully submit that even if the defendants knew or should
24  have known that the plaintiffs' shack was an inhabited dwelling, a search of the
25  shack was authorized under *Gutierrez*.  Specifically, the officers had probable cause
26  to believe a dangerous felony suspect was at the property which, under the court's
27
28

Hurrell Cantrall LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

view, had two, separate dwellings.[4]   While defendants submit there were exigent circumstances to justify entry into either the main house or the plaintiffs' shack, even if the court found there was only exigent circumstances to justify entry into the main residence, a warrantless search of the shack was authorized as a protective sweep under *Gutierrez*.  Certainly, the law is not clearly established to the contrary, and qualified immunity should have been granted in favor of the defendants with respect to the warrantless entry of plaintiffs' home, as the law is not clearly established that the officers' conduct violated the law, such that *every* reasonable officer would have known they were violating plaintiffs' Fourth Amendment rights at the time of the incident.  Rather, cases with a similar fact pattern have found there was no Fourth Amendment violation.

> **c.**    ***Due to the Risk of Being Ambushed During Retreat, An Officer May Perform a Protective Sweep Of An Area.***

In *United States v. Lemus*, *supra*, 582 F.3d 958, the Ninth Circuit followed the principles set forth in *Maryland v. Buie*.  In *Lemus,* the officers had an arrest warrant, arrested the suspect outside of his apartment as he was backing into the sliding glass door of his apartment, and then went into the apartment to make sure there where no dangerous individuals inside of the apartment, at which time they saw a gun sticking out of the sofa.  *Id.* at 959-960.  In determining the lawfulness of the search and seizure, the Ninth Circuit reiterated that arresting an individual in a home environment creates a concern that others associated with the suspect might ambush the officers, and an ambush in a confined setting of unknown configuration is to be feared.  *Id.* at 962.  The Ninth Circuit stated that an officer may make: (1) a "protective search" without probable cause or reasonable suspicion of an area that (a) immediately adjoins the area of arrest and (b) is one from which an attack could

---

[4] Defendants continue to maintain a reasonable officer could have mistakenly believed the shack was uninhabitable.

1   be immediately launched or is capable of concealing at least one person; or (2) a

2   "protective sweep" if he has articulable facts which to warrant a reasonably prudent

3   officer in believing that the area to be swept harbored an individual posing a danger

4   to those at the scene.  *Id.*  While the Ninth Circuit found the officers were entitled to

5   conduct the search for officer safety reasons under the first prong, the Court noted

6   that although the suspect argued the police officers could have just left the premises

7   immediately after the arrest, the Ninth Circuit found this fact does not make a search

8   of the living room any less necessary--there was no guarantee that a potential

9   attacker would not ambush the officers after they had turned their backs to the door.

10  *Id.* at 964.

11          In this case, there was probable cause to believe the suspect was in the shed.

12  The suspect was a parolee-at-large who was to be considered armed and dangerous.

13  Thus, there was clearly articulable facts or a reasonable belief that articulable facts

14  existed that the shack harbored an individual posing a danger to those at the scene.

15  Thus, the judgment must be reversed in this case based on qualified immunity.

16          **d.    *A Protective Sweep May Be Conducted of the Backyard of a Home If the Officers Believe the Yard May Harbor an***

17  **            *Individual Posing a Danger to Those On the Scene, Including Structures or Sheds Within the Yard.***

18

19          An arrest or search inside a home may justify a protective sweep outside of

20  the home, and vice versa.  See *United States v. Minor*, 2007 U.S. App. LEXIS

21  13068 (11th Cir. 2007) (police executing an arrest warrant at a property were

22  justified in performing a protective sweep of the yard); *compare to United States v.*

23  *Maldonado*, 472 F.3d 388, 393 (5th Cir. 2006) (the Court found an arrest on the

24  driveway justified a search of the home and stated "the protective sweep doctrine

25  may apply even if the arrest occurs outside the home"); *Fishbein, supra,* 469 F.3d

26  957 (where parents were arrested in yard, officers were justified in performing a

27  protective sweep of the home where they reasonably feared for the safety).  In

28  *United States v. Paopao*, 469 F.3d 760 (9th Cir. 2006), the Ninth Circuit indicated

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

-18-

1    that a protective sweep of the home is justified where an individual is arrested just

2    outside of a home, as a bullet fired at an arresting officer standing outside a window

3    is as deadly as one that is projected from one room to another. *Id.* at 765. Thus, the

4    location of the arrest, inside or outside the premises, should only bear on the

5    question of whether *the officers had a justifiable concern for their safety. Id.* at 766.

6    In *United States v. Carpenter*, 2011 U.S. Dist. LEXIS 16862 (ED. Tenn.

7    2011), the suspect argued that regardless of the warrant for his arrest, the officers

8    violated his Fourth Amendment rights in searching the outbuilding and shed of his

9    home. *Id.* at 45. The court noted the officer was aware another person was

10    potentially on the property and he entered two outbuildings for the purpose of

11    securing the area and "clearing" the buildings, and to make sure there was no one

12    hiding in them. *Id.* The court noted that at the point the officer entered the

13    outbuildings, he was aware of articulable facts that made it reasonable for him to

14    believe that officers might be in danger from someone else on the defendant's

15    property. *Id.* at 46. Similarly, in *United States v. Pericles*, 2009 U.S. Dist. LEXIS

16    45044 (S.D. Fla. 2009), the suspect sought to suppress evidence found during a

17    protective sweep of his backyard. *Id.* at *10. The court found that protective sweep

18    of the backyard was lawful and that when the officers were unable to locate an

19    individual they believed was inside the residence, they properly conducted a

20    protective sweep of the backyard for the third individual, including looking inside a

21    shed. *Id.* at *12.

22       e.    ***The Search of the Shack Was Clearly Justified as a Protective Sweep For a Dangerous Individual Or Defendants Must Be Granted Qualified Immunity.***

23

24       In this case, there were exigent circumstances to search the main house.

25    Thus, the officers were fully justified in performing a limited protective sweep of

26    the backyard, including the shed, to confirm the suspect was not hiding therein.

27    Defendants respectfully submit there were articulable facts or a reasonable suspicion

28    upon which to believe the dangerous suspect was hiding in the backyard, including

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

-19-

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1  inside of the plaintiffs' shack.  In fact, this court found there was *probable cause* to

2  believe the suspect was hiding in the shed.  Thus, as a matter of law, the officers

3  were justified in performing a warrantless search of the shack as a protective sweep.

4  The evidence is undisputed that the defendants were dispatched to clear the

5  shed and the only "search" in this case of the shed was the opening of the door by

6  Deputy Conley.  Deputy Conley testified that in searching the sheds in the backyard,

7  he was looking for people and to clear the area.  (Ex. B, p. 74:16-75:3.)  Deputy

8  Conley repeatedly explained he was looking for people, weapons and threats to clear

9  the backyard, not any specific items.  (Ex. B, p. 77:24-78:6, 79:3-11, 82:20-83:3.)

10  Unlike a full search of a home which requires a search warrant, a protective sweep is

11  limited in nature and is justified where there exists a potential danger to the officers.

12  The law set forth above demonstrates that a protective sweep for individuals who

13  may pose a danger to the officers is permissible when an officer lawfully enters a

14  home, ***and properly includes a sweep of detached, inhabited dwellings***, as well as

15  outbuildings or sheds in the backyard, particularly where an armed and dangerous

16  suspect may be hiding in the backyard of the property. *Supra.*

17  The court found the defendants were searching in the backyard for the

18  suspect, who they believed to be armed and dangerous.  (Ex. A, p. 8.)  In opening

19  the door to the shed, they were clearly looking for a suspect who may have been

20  hiding in the area to be swept (in fact, the court already made a finding that there

21  was probable cause, and certainly a reasonable suspicion, to believe the suspect was

22  in the plaintiffs' shack), and the search was justified as a protective sweep as a

23  matter of law.  ***The fact that an officer is not aware of any specific person hiding***

24  ***or does not feel a specific threat from any individual while he is conducting a***

25  ***protective sweep does not make the protective sweep any less valid or the situation***

26  ***any less dangerous, as he need only have a reasonable suspicion that the area to***

27  ***be swept may harbor a dangerous individual.***

28  In addition, with regard to this court's findings that the officers could have

-20-

1 obtained a search warrant as the suspect would have been trapped in the shed, as the

2 Ninth Circuit stated in *United States v. Lemus*, *supra* 582 F.3d 958, 964, such a

3 finding should be overturned as there was no guarantee that a potential attacker

4 would not have ambushed the officers after they turned their backs to the shed, and

5 an immediate sweep of the shed was therefore plainly justified.  Also, under *United*

6 *States v. Taylor, supra,* 248 F.3d 506, officers who make the decision to obtain a

7 search warrant are still justified in performing a protective sweep.

8      Furthermore, defendants respectfully submit that a "protective sweep" of the

9 plaintiffs' shack was authorized under the circumstances of this case, regardless of

10 whether the deputies believed or should have believed the shack was inhabited or

11 uninhabited.  ***Defendants respectfully submit that Gutierrez v. County of L.A.,***

12 ***supra, 2013 U.S. Dist. LEXIS 103829, authorizes a protective sweep of a separate***

13 ***dwelling at a single residence***.  Defendants are of aware of no cases reaching a

14 contrary finding, and respectfully submit the law is plainly not clearly established

15 that a protective sweep cannot be performed of a structure believed to be inhabited

16 by individuals, located within the address of a property for which the officers are

17 already lawfully searching the premises.  Along these lines, the findings by the court

18 that the defendants should have known the shack was inhabited do not impact the

19 lawfulness of the search of the shack as a protective sweep.  Moreover, even if the

20 court should disagree, the law is not *clearly established* and defendants are entitled

21 to qualified immunity as a matter of law from plaintiffs' Fourth Amendment

22 warrantless search claim.

    **D.**     **AN OFFICER WITH AUTHORITY TO PERFORM A**
23           **"PROTECTIVE SWEEP" DOES NOT NEED TO COMPLY**
24           **WITH THE "KNOCK AND ANNOUNCE" REQUIREMENT.**

25      The court found there was no dispute that officers complied with the knock

26 and announce requirement with respect to the main residence.  (Ex. A, p. 35.)  As

27 indicated above, a "protective sweep" is performed when an officer has gained

28 lawful entry to an area.  In this regard, there is no additional requirement under the

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1  "Fourth Amendment" that an officer "knock and announce" his presence as he goes

2  along, carrying out the protective sweep.  To the contrary, the very nature of a

3  protective sweep and its quest to find dangerous individuals hiding in the area to be

4  swept makes compliance with the knock and announce requirement dangerous and

5  unwarranted.  Even if such a requirement were found to exist under the Fourth

6  Amendment, the law is certainly not clearly established that an officer is required to

7  "knock and announce" his presence as he performs a lawful protective sweep after

8  lawfully gaining entrance to the home.

9       In addition, the officers had their guns drawn as they were clearing the sheds,

10  and Deputy Conley testified at trial that he would not want to "knock and announce"

11  while clearing a structure where the parolee-at-large was possible hiding for officer

12  safety reasons, as announcing their presence would put himself and his partner at

13  risk.  (Ex. B, p. 55:23-56:6.)  Certainly, under the case law available, not *every*

14  reasonable officer would have believed the officers acted unlawfully in this case.

15  As a result, defendants respectfully submit that they are entitled to qualified

16  immunity, based upon the factual findings made by this court, and the volatile and

17  potentially extremely dangerous circumstances facing the officers.  Due to the

18  unique circumstances and facts of this case, a reasonable officer in the position of

19  the defendants *could* have believed their conduct was lawful.  The fact that two

20  individuals who committed no wrongdoing ended up injured, while certainly tragic,

21  does not eviscerate the important defense of qualified immunity to the officers in

22  relation the plaintiffs' 42 U.S.C. § 1983 cause of action.

23  **V.   AS THERE WAS NO INDEPENDENT FOURTH AMENDMENT**
       **VIOLATION OR QUALIFIED IMMUNITY APPLIES, THERE CAN**
24     **BE NO DAMAGES BASED UPON FORCE BY PROVOCATION.**

25       As there is no independent Fourth Amendment violation for a warrantless

26  entry or a failure to comply with the knock and announce requirement as set forth

27  above, there can be no force by provocation under the *Alexander v. City and County*

28  *of San Francisco*, 29 F.3d 1355, 1366 (9th Cir. 1994) and *Billington v. Smith*, 292

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

F.3d 1177, 1188 (9th Cir. 2002) line of cases.  Alternatively, qualified immunity on the warrantless entry and failure to comply with the knock and announce claims likewise precludes the force by provocation doctrine.  (*Maceachern v. City of Manhattan Beach*, 623 F.Supp.2d 1092, 1102 (C.D. Cal. 2009); *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 533, 538-39 (9th Cir. 2010).  As defendants are entitled to qualified immunity from the underlying predicate Fourth Amendment claims, they cannot be held liable for damages under the force by provocation doctrine as a matter of law.

## VI.   DEFENDANTS RESPECTFULLY REQUEST DIFFERENT AND/OR ADDITIONAL FACTUAL FINDINGS.

Defendants respectfully submit they are entitled to qualified immunity based upon the factual findings made by the court.  In addition, the defendants respectfully additional or different factual findings as follows:

(1)   Defendants request a finding on whether exigent circumstances existed to search the Hughes residence and yard, as addressed above.

(2)   The court indicated Deputy Conley did not feel threatened when he searched the plaintiffs' shack.  However, Deputy Conley repeatedly stated he was attempting to clear the backyard for threats to the officers, and explained the dangerousness of the situation.  Defendants respectfully submit that the context of Deputy Conley's testimony was that he did not have a specific knowledge that the parolee-at-large was actually in the plaintiffs' shed at the time he opened the door; however, he explained the situation was very dangerous and he would have felt an immediate threat if he had knocked and announced his presence.

> Q.   And at that time, did you believe that Ronnie O'Dell was in that shack?
>
> A.   *I didn't have a specific belief that he was in fact in here. However, I didn't neglect the fact that he could have been.*
>
> Q.   But you didn't have a specific idea that there was someone armed and dangerous in that particular shack when you approached it.

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1  A.  No. I wouldn't say that I assumed someone was armed and dangerous in there.

2

3  (Ex. B, p. 85:14-23 (emphasis added).)  In fact, Deputy Conley then explained that

opening the door had to be done by someone, and that it was a dangerous position to

4  be in.  (Ex. B, p. 85:24-86:12.)  Deputy Conley further testified as follows:

5

6  Q.  At the time that you decided to open the door and/or move the blanket, you didn't believe anyone was inside, and you didn't feel threatened; is that correct?

7

8  A.  *I wouldn't say that.*

9  Q.  I'd like to read from the deposition -- excuse me one moment, I have the deposition -- Page 60, line 3 through 6:

10

11  "QUESTION: Is the reason you didn't feel there was      a need to is because you didn't believe anyone was inside?"

12  ANSWER: That, and I didn't feel threatened *at the time.* I didn't think I needed assistance."

13

14  Q   As you sit here today, did you believe that there was any threat inside of the shed, that shack that you approached and opened?

15

16  A   The question you just asked me previously was kind of two questions: Did you believe someone was in the shed, and, You didn't feel threatened. *I didn't make an assumption whether someone was or was not in the shed.* But prior to opening the shed, no, I didn't feel threatened.

17

18

19

20  Q   Okay. So if you didn't feel threatened, would there have been any danger that you perceived by knocking and noticing while you obtained cover or concealment?

21

22  A   I think that goes back to me having the mindset that I did not want to give knock and notice because that would put me --*if I was to give a knock and notice, then I would feel threatened.* I would feel exposed, and I would feel as if I gave away my location.

23

24

25  (Ex. B, p. 87:25-90:6 (emphasis added).)  Defendants respectfully submit Deputy

26  Conley's testimony showed there were clearly serious officer safety concerns held

27  by the defendants at the time of the incident.

28      (3)  Paula Hughes, owner of the main residence, was on probation requiring

-24-

1  her to consent to search.  (Thus, a search of the plaintiffs' shed and the backyard was

2  justified as a protective sweep.)

3        (4)    Paula Hughes' house was a known drug trafficking house.

4        (5)    The evidence did not show the defendants would or could have seen the

5  hose, cords and A/C unit in relation to the shed as they were partially covered by

6  tarps, and the officers' attention was focused upon finding the parolee-at-large.

7        (6)    There is no evidence the deputies knew the shed had one only door.

8        (7)    There were about *50 officers* at the Albertson's debriefing when

9  Detective Rissling provided information regarding the search of the home.

10  **VII.  AN AWARD OF FUTURE MEDICAL EXPENSES MUST BE REDUCED TO PRESENT VALUE.**

11      In determining damages in an action under 42 U.S.C. § 1983, the court may

12  look to the state law damages of the forum state.  *Sullivan v. Little Hunting Park,*

13  *Inc.*, 396 U.S. 229, 240 (1969); *County of L.A. v. Superior Court*, 21 Cal.4th 292,

14  297 (1999).  Under California law, to recover damages for future medical expenses,

15  the award of future damages must be reduced to its present value.  *Fox v. Pacific*

16  *Southwest Airlines*, 133 Cal.App.3d 565, 568-69 (1982).  Expert testimony is needed

17  to establish the present value of the costs of future medical expenses.  *Niles v. City*

18  *of San Rafael*, 42 Cal.App.3d 230, 243 (1974); CACI 3904A, "Directions For Use".

19  Thus, such damages should be stricken or reduced to present value.

20  **CONCLUSION**

21      Based  upon  the  foregoing,  the  defendants  request  the  court  amend  the

22  findings of fact and conclusions of law and amend the judgment as set forth above.

23  DATED: Septmeber  23 , 2013     HURRELL CANTRALL LLP

24

25                          By: _____

26                              THOMAS C. HURRELL
                            MELINDA CANTRALL

27                              Attorneys for Defendants

28

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

## DECLARATION OF THOMAS C. HURRELL, ESQ.

I, THOMAS C. HURRELL, hereby declare as follows:

1.     I am an attorney duly licensed to practice in all of the courts of the State of California and I am the managing partner at Hurrell Cantrall LLP, attorneys of record for defendants.

2.     I was lead trial counsel on behalf of defendants at the trial of the above-captioned matter, and I was present throughout the entire trial.  The facts set forth herein are of my own personal knowledge and if sworn I could and would testify competently thereto.

3.     I make this declaration in support of defendants' motion to amend.

4.     Attached hereto as Exhibit "A" is a courtesy copy of the court's August 13, 2013 Findings of Fact and Conclusions of Law.

5.     Attached hereto as Exhibit "B" is a true and correct copy of the trial testimony of Deputy Conley, pages 55, 74-82, and 85-90.

6.     Attached hereto as Exhibit "C" is a true and correct copy of the relevant portion of the trial transcript of plaintiffs' expert Roger Clark, pages 14-15.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of September, 2013 in Los Angeles, California.


_____

THOMAS C. HURRELL - Declarant

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 700 South Flower Street, Suite 900, Los Angeles, California 90017-4121.

4

5

On September 24, 2013, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION TO AMEND THE JUDGMENT OR MAKE ADDITIONAL FINDINGS ON BEHALF OF DEFENDANTS COUNTY OF LOS ANGELES, CHRISTOPHER CONLEY AND JENNIFER PEDERSON** on the interested parties in this action as follows:

6

7

8

David Drexler, Esq.                                        *Attorneys for Plaintiff*
Jonathan A. Drexler, Esq.
Michael H. Leff, Esq.
LAW OFFICES OF DAVID
DREXLER
13808 Ventura Blvd.
Sherman Oaks, CA 91423
Telephone: (818) 907-7373

9

10

11

12

13

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address dneff@hurrellcantrall.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

14

15

16

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

17

Executed on September 24, 2013, at Los Angeles, California.

18

19

20

Diane Neff

21

22

23

24

25

26

27

28

HURRELL CANTRALL LLP
700 SOUTH FLOWER STREET, SUITE 900
LOS ANGELES, CALIFORNIA 90017-4121
TELEPHONE (213) 426-2000